Appellant, Jason Henthorn, appeals from the decision of the Belmont County Court of Common Pleas, Juvenile Division, which awarded custody of his minor son to appellee, Rya Henthorn.
Appellant and appellee were married on May 22, 1998. One child was born to the parties, Jason Ryan Henthorn (Jason) (d.o.b. 9/30/98). When Jason was born, the parties resided in Jesup, Georgia. They subsequently moved to Shadyside, Ohio. Although they are not divorced, the parties are currently living apart. Appellant now resides in Shadyside while appellee lives in Georgia.
After a little over two years of seemingly constant fighting, appellee moved back to Georgia, where her father and sister reside, with Jason. She did not give appellant any notice. At the time appellee left appellant, the parties had been living together in Shadyside.
Appellant filed a Petition for Allocation of Parental Rights and Responsibilities on June 5, 2000 in the Juvenile Division of the Belmont County Court of Common Pleas. Jurisdiction was proper in the Juvenile Division since Jason was not a ward of another Ohio court. R.C.2151.23(A)(2). A hearing was held before a magistrate on July 19, 2000. The magistrate denied appellant's petition for custody and found that appellee should be named Jason's residential parent. Appellant filed objections to the magistrate's decision. On August 16, 2000, the trial court affirmed the magistrate's decision. Appellant filed his timely notice of appeal on September 11, 2000.
Appellant alleges two similar assignments of error, which we will address together. Appellant's first assignment of error states:
 "THE LOWER COURT'S DECISION AWARDING CUSTODY OF THE MINOR CHILD TO THE APPELLEE WAS AN ABUSE OF DISCRETION BECAUSE IT FAILED TO APPLY ALL RELEVANT FACTORS SET FORTH IN R.C. 3109.04(F)(1)."
Appellant's second assignment of error states:
 "THE LOWER COURT ABUSED ITS DISCRETION BY FAILING TO CONSIDER THE APPELLEE'S ANGER ISSUES AND MENTAL INSTABILITY ISSUES IN DETERMINING THE BEST INTERESTS OF THE MINOR CHILD."
Appellant argues that the trial court failed to consider all of the statutory factors set out in R.C. 3109.04(F)(1). In particular, appellant alleges that the court did not consider R.C. 3109.04(F)(1)(c), (d), and (j). He claims that the court only considered his anger and control issues and their impact on Jason.
Appellant argues that the evidence showed that appellee had very little interaction with Jason. He claims that the evidence demonstrated that he and his parents provided Jason with his everyday care. Appellant also argues that the court failed to consider the fact that appellee moved to Georgia and took Jason with her without informing him.
Appellant also argues that the trial court did not take into consideration appellee's alleged anger and mental instability. He points to his own testimony and that of his father. Appellant testified that appellee broke household items during a fight and that appellee was physically aggressive. He testified that appellee had hit him and split his lip. Appellant also testified he had filed a domestic violence petition against appellee since she threatened to kill him. Appellant's father testified that he has heard appellee yelling at and hitting appellant. Additionally, appellant points out that appellee threatened suicide in the past, which shows her mental instability.
A reviewing court will not reverse a trial court's decision on custody matters unless the trial court abused its discretion. Davis v.Flickinger (1997), 77 Ohio St.3d 415, 416. An abuse of discretion connotes more than an error in law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
In a proceeding concerning the allocation of parental rights and responsibilities, the court shall take into account what is in the child's best interest. R.C. 3109.04(B)(1). R.C. 3109.04(F)(1) sets out the factors a court must consider in determining the best interest of a child. These relevant factors include, but are not limited to:
 "(a) The wishes of the child's parents regarding the child's care;
 "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 "(d) The child's adjustment to the child's home, school, and community;
 "(e) The mental and physical health of all persons involved in the situation;
 "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. 3109.04(F)(1).
Absent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant factors listed in R.C.3109.04(F)(1). Evans v. Evans (1995), 106 Ohio App.3d 673, 677.
Although neither the magistrate's decision nor the trial court's judgment entry specifically discuss the enumerated factors, we can presume from the record that the trial court did consider the best interest factors.
As to the first factor, the wishes of the parents, it is apparent that each parent wishes to have Jason reside with them. The second factor is not relevant because the court did not interview Jason.
Concerning the third factor, there was testimony presented regarding Jason's interaction with family members. Appellant testified that appellee spent very little time with Jason. He also testified that Jason listens to him but not to appellee. Appellant's father testified that Jason and appellant spent a lot of time at his house and that he often cooked for Jason and read to him. Appellant's brother testified that he babysat for Jason. Appellee testified that she was the primary caregiver for Jason. Appellee's grandmother testified that she babysat for Jason when appellee worked. Appellee's father testified that he has spent a lot more time with Jason since appellee moved back to Georgia.
As to the fourth factor, some testimony was presented as to Jason's adjustment at home after appellee moved with him to Georgia. Appellee's father testified that Jason seemed more relaxed and fun loving since appellee left appellant and moved to Georgia. Appellee's grandmother testified that Jason is a happier baby since appellee left appellant.
Most of the parties' testimony centered around the fifth factor, specifically each parties' anger and violence towards each other. The magistrate found that appellee is "immature and impulsive and has exercised some poor judgments." However, the magistrate stated that he was most concerned with appellant's "anger and control issues and with their potential impact on an impressionable young child." Appellant testified that during one fight between the parties, appellee hit him and split his lip open and during another fight she threw a television set on the floor and smashed a camcorder. He also testified that he has seen appellee hit Jason on two occasions. Appellant's father testified that he has heard appellee screaming at Jason and at appellant.
Appellee testified that she had threatened suicide in the past. She testified that appellant did not trust her and that he watched her tire tracks and monitored her phone calls so that he would always know what she was doing. Appellee also testified that appellant has physically abused both her and Jason. Appellee's grandmother testified that she observed bruises on appellee and that appellee told her that appellant had kicked her. Appellee's father testified that appellant had a bad temper and that he too had seen the bruises on appellee.
The parties did not present much testimony as to which one of them would be more likely to honor and facilitate visitation. However, they both seemed agreeable to one visit where they would meet in Charlotte, North Carolina to exchange Jason.
No child support was in existence so neither party was in arrears. There was no evidence that either party had ever been convicted of any criminal offense. Also, since no court order was in effect for visitation, neither party willfully violated such an order. As to the final factor, appellee has established a residence outside of Ohio in Georgia where her father and sister reside.
Although appellant presented evidence of appellee's unstable temperament, appellee also presented a significant amount of evidence regarding appellant's controlling and aggressive behavior. A reviewing court should give the trial court great deference since they are in a position to observe the witnesses and parties during a custody proceeding. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. The parties' credibility is "even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis, supra, at 419.
Despite the fact that the trial court failed to discuss the statutory factors in its judgment entry, we cannot say that the court failed to consider those factors in making its decision. There is no requirement that a trial court separately address each factor enumerated in R.C.3109.04. Janson v. Janson (Nov. 1, 1994), Hamilton App. No. C-940913, unreported, 1995 WL 653849 at *2; In re Petrella (May 8, 1997), Cuyahoga App. No. 70914, unreported, 1997 WL 232635 at *2. However, in the future, it would be helpful to this court for the trial court to specifically refer to the factors set out in R.C. 3109.04 when making custody determinations.
At the hearing, the parties presented evidence relating to all of the relevant factors. The court stated that it reviewed the file, the transcript, and appellant's objections to the magistrate's decision. We should not presume that the trial court failed to consider all of the factors merely because it did not discuss the factors in its judgment entry. The parties presented sufficient evidence at the hearing going to all relevant factors so that we can determine that the trial court did not abuse its discretion in awarding custody of Jason to appellee.
Accordingly, both of appellant's assignments of error are without merit.
For the reasons stated above, the decision of the trial court is hereby affirmed.
Vukovich, J., concurs
DeGenaro, J., concurs